## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

ANDREW R. PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

   Plaintiff

vs.

PELICAN INVESTMENT
HOLDINGS, LLC D/B/A AAP
3411 SILVERSIDE ROAD
TATNALL BUILDING STE 104
WILMINGTON, DE 19810,

SUNPATH LTD.
838 WALKER ROAD SUITE 21-2
DOVER, DE 19904,

and

SEABURY ASSET MANAGEMENT LLC
D/B/A MEPCO
838 WALKER ROAD SUITE 21-2
DOVER, DE 19904

   Defendants.

Case No. __ 2 2 - 5 9 4 __

JURY TRIAL DEMANDED



FILED
MAY 02 2022
US DISTRICT COURT
DISTRICT OF DELAWARE

## COMPLAINT

### Preliminary Statement

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to

widespread public outrage about the proliferation of intrusive, nuisance calling practices. *See*

*Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

3.      The Plaintiff received at least three illegal telemarketing "robocalls" from

Defendants in January of 2022.

4.      The Plaintiff never consented to receive the calls, which were placed to him for

telemarketing purposes.

### Parties

5.      Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of the

Eastern District of Pennsylvania.

6.      Defendant Pelican Investment Holdings, LLC is a Delaware corporation

headquartered in West Palm Beach, Florida. Pelican does business under the name AAP. Its

address for service of process is 3411 Silverside Road Tatnall Building Ste 104 Wilmington, DE

19810. Defendant AAP sells and services vehicle service contracts, colloquially referred to as

"extended warranties," in this District, Pennsylvania, and elsewhere.

7.      Defendant Sunpath Ltd. is a Delaware corporation headquartered in Braintree,

Massachusetts. Its address for service of process is 838 Walker Road Suite 21-2 Dover, DE

19904. Defendant Sunpath administers and is the obligated party for the vehicle service

contracts, colloquially referred to as "extended warranties," that AAP sells in this District,

Pennsylvania, and elsewhere.

8.      Defendant Seabury Asset Management LLC is a Delaware corporation

headquartered in Chicago, Illinois. Seabury does business under the name Mepco. Its address for

2

service of process is 838 Walker Road Suite 21-2 Dover, DE 19904. Defendant Mepco

administers the billing and payment arrangements for the Sunpath vehicle service contracts,

colloquially referred to as "extended warranties," that AAP sells in this District, Pennsylvania,

and elsewhere.

9.      The Defendants engaged in calling activity into this District, as they did with the

Plaintiff.

## Jurisdiction & Venue

10.     The Court has federal question subject matter jurisdiction over these TCPA

claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of

the events or omissions giving rise to the claim occurred in this District, as the automated calls

and text messages to the Plaintiff were placed from companies headquartered in this District.

## The Telephone Consumer Protection Act

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

automated calling industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing .

. . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub.

L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits all Automated Calls To Protected Numbers

13.     The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone

number assigned to a paging service, cellular telephone service, specialized mobile radio service,

3

or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

14.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded telephone calls onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient.

16.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

17.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or *any* service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. 20-5317 (E.D. Pa. July 15, 2021).

The Growing Problem of Automated Telemarketing

18.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

19.    "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

20.    In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

21.    *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html [https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM),

https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

22.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

23.    According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

24.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

The National Do Not Call Registry

25.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

26.     A listing on the Registry "must be honored indefinitely, or until the registration is

cancelled by the consumer or the telephone number is removed by the database administrator."

*Id.*

27.     The TCPA and implementing regulations prohibit the initiation of telephone

solicitations to residential telephone subscribers whose numbers are on the Registry and provides

a private right of action against any entity that makes those calls, or "on whose behalf" such calls

are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

28.     Defendants are in the business of selling and operating various portions of, *inter

alia*, vehicle service contracts, colloquially referred to as "extended warranties."

29.     Defendants rely on telemarketing to solicit potential customers for their extended

warranty services.

30.     Upon information and belief, Defendants are not registered as telemarketers with

the Attorney General of Pennsylvania.

31.     One of the strategies used by the Defendants involves the use of automated

telephone calls. Defendants send out these call blasts *en masse* to telephone numbers throughout

the area, hoping they reach someone interested in purchasing their services.

32.     Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

33.     Plaintiff has a private telephone number of (215) 322-XXXX.

34.     The Plaintiff is charged for each call placed to the (215) 322-XXXX number.

35.     The number is not associated with any business.

7

36.     The Plaintiff registered the number on both the Federal and Pennsylvania State Do-Not-Call registries, was on such registries for more than thirty-one days prior to the calls, and never removed the number from these registries.

37.     The number is used for Mr. Perrong's personal residential use.

38.     The Plaintiff did not consent to receive the calls complained of herein to his number.

39.     On January 17, 2022 at 12:01 PM, the Plaintiff received a call from the caller ID 215-320-1703.

40.     Upon information and belief, this call was placed by an unknown third-party lead generation company for the Defendants' benefit.

41.     The call began by playing a prerecorded message stating, "We are calling because you should have received several notifications in the mail about your car's extended warranty. As we have not gotten a response, we are giving you a final courtesy call before we close out your file. Press 1 now to speak with a representative."

42.     Because the name of the caller was not identified in the prerecorded message, Plaintiff knew that it would not be easy, or potentially impossible, to identify the caller, so Plaintiff pressed "1" to speak with a representative.

43.     When the representative, "Brian" came on the line, he claimed to be calling from the generic "Warranty Division." Because of the caller's use of a generic name, Plaintiff knew that it would not be easy, or potentially impossible, to identify the caller without actually purchasing a contract.

8

44.     Plaintiff was transferred to multiple agents during the call before purchasing a contract. Eventually, Plaintiff purchased a contract and provided unique information, including credit card number and e-mail address on January 17, 2022.

45.     While still on the line with the initial caller, Plaintiff received a sales call from 878-227-7794.

46.     Upon information and belief, the caller was Defendant Mepco, calling for the ultimate benefit of all Defendants.

47.     As the Plaintiff was still on the line with the representative from AAP, he did not answer this call, and the caller left no message.

48.     Plaintiff received a charge on his credit card from AAP shortly after this telephone call and the initial call concluded.

49.     Thereafter, on January 17, 2022 at 12:43 PM, Plaintiff received a call from 888-678-0697.

50.     This caller was calling from AAP, for the ultimate benefit of all Defendants, in order to obtain a mileage and VIN number to complete the sale of the contract, despite the fact that the sale had already completed and Plaintiff's credit card had been charged.

51.     On January 26, 2022, Plaintiff received an email from Mepco outlining the purported contract billing terms for the contract that Defendants attempted to sell Plaintiff during the illegal telemarketing calls on January 17.

52.     Also on January 26, Plaintiff received a booklet in the mail outlining the proposed terms of the Contract. On its first page, the booklet lists the plan name as Defendant Sunpath's "Sunpath Mileage Plus," the finance company as Defendant Mepco's "Mepco INSTALLMENT AGREEMENT" and the "Seller/Dealer/Vendor Name" as Defendant "AAP."

53.     All the calls began either with a pause prior to someone coming on the line or played prerecorded messages.

54.     Additionally, one of the calls came while the Plaintiff was still on the line with Defendant AAP.

55.     As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021). The telephone system(s) used to contact the Plaintiff are ATDS(es) because it/they has/have the capacity to store numbers both randomly and sequentially.

56.     Furthermore, the indicia of the calls indicate that the Defendants used an ATDS because it would be illogical to store numbers or produce numbers in an *en masse*, unpersonalized calling campaign other than randomly or sequentially, such as by a human dialing the number manually. ATDS systems also exhibit strange behavior not typically associated with manually dialed calls, such as placing multiple calls simultaneously and then hanging up or not leaving a message. The fact that the calls were not at all personalized and exhibited this strange behavior further supports the inference that the Defendant used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Id.* at 1171 n.7.

57.     After the calls, the Plaintiff requested, in writing, that Defendants place him on their Do-Not-Call list and provide him a copy of their Do-Not-Call policy, on January 26, 2022. Plaintiff received no response from Defendants AAP or Mepco as of the date of filing this

complaint, despite having forwarded the correspondences to multiple points of contact in each company.

58.     Moreover, Defendant Sunpath did not provide Plaintiff a copy of their Do-Not-Call policy, place Plaintiff on their Do-Not-Call list, and simply made a general denial when confronted with the evidence of their illegal conduct.

59.     Because Plaintiff asked to be placed on Defendants' Do-Not-Call lists and was not, it is evident that Defendants do not maintain such lists. Likewise, based on this fact and the fact that they did not produce one when requested, it is clear that Defendants do not have any Do-Not-Call policies or procedures in place. Based on the nature of their illegal activities, Defendants' noncompliance with the law in this regard is unsurprising.

60.     The Plaintiff is ignorant of the exact process by which the system(s) used by the Defendants operate other than drawing the reasonable inference and making the allegation that it stores or produces telephone numbers randomly or sequentially based on the facts ascertainable from the calls he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage. *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

61.     The Plaintiff never provided his consent or requested these calls.

62.     The Plaintiff was charged for the calls to the (215) 322-XXXX number.

63.     The communications received by Plaintiff demonstrate that the messages were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods,

or services as they pitched automobile service contracts. The messages therefore qualified as telemarketing. *See* 47 C.F.R. § 64.1200(f)(12).

64.    Upon information and belief, Defendants pay unknown third parties to perform calling for them. These Defendants were involved in some fashion in placing the illegal calls the Plaintiff received. However, without the benefit of discovery, the specific details and exact technical role they played in the calls the Plaintiff received remain a mystery.

65.    Indeed, an FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network, LLC Declaratory Ruling Petition*, 28 FCC Rcd. 6574, 6592–93 (2013).

66.    Plaintiff was harmed by these calls. He was temporarily deprived of legitimate use of his phone because his phone line was tied up during the calls and his privacy was improperly invaded. The Plaintiff was charged for some of the calls. They wasted network resources, bandwidth, and power. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Calling Numbers for Which the Called Party is Charged with an Artificial or Prerecorded Voice

67.    By placing at least three calls to the Plaintiff using both a ATDS and/or artificial or prerecorded text messages, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

68.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least three violations of the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to the telephone

line of Plaintiff using an ATDS or using artificial or prerecorded voices to a number for which the called party is charged for the calls.

69.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500 in damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating these provisions in 47 U.S.C. § 227(b) in the future.

71.     The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

**Count Two:**
**Violation of the Pennsylvania Telemarketer Registration Act**
**73 Pa. Cons. Stat. § 2241**

72.     By placing at least three telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants violated 73 Pa. Cons. Stat. § 2243. Moreover, by failing to identify themselves in the messages, Defendants violated 73 Pa. Cons. Stat. § 2245.1.

73.     This constitutes three violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

74.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple

violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

75.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

76.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

### Count Three:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

77.     By placing at least three telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

78.     This amounts to nine violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

79. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least nine violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

80. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

81. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

82. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

**Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

a. Injunctive relief prohibiting Defendants from calling telephone numbers using an ATDS, making calls using an artificial or prerecorded voice, and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

   b.  Because of Defendants' violations of the TCPA's restrictions in 47 U.S.C.

§ 227(b), Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such

regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47

U.S.C. § 227(b)(3).

   c.  Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks

for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

   d.  Because of Defendants' violations of the TCPA's implementing

regulations, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where

such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to

47 U.S.C. § 227(c)(5).

   e.  Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **April 29, 2022**

/s/
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

16

**PRESS FIRMLY TO SEAL**



U.S. POSTAGE PAID
PME 1-Day
HUNTINGDON VALLEY, PA
19006
APR 30, 22
AMOUNT
**$0.60**
R2304M116069-39

1007   19801


GRAND ISLAND ICE CAVES


**UNITED STATES POSTAL SERVICE®**

# PRIORITY® MAIL EXPRESS

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP


**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL EXPRESS®**

EI 099 581 958 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE (215) 791 - 6957

Andrew Perrong
1657 The Fairway #131
Jenkintown PA 19046

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (302) 573 - 6170

Office of The Clerk
US District Court, District of DE
844 N. King St. Unit 18
Wilmington, DE

ZIP + 4® (U.S. ADDRESSES ONLY)

1 9 8 0 1 - 3 5 7 0

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 Insurance Included.

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☑ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 19006 | 5-2-22 | $ 26.95 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 4-30-22 | ☑ 6:00 PM | $ | $ |

| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 11:22 ☑ AM ☐ PM | | $ | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | 26.95 |

| Weight | ☐ Flat Rate | Acceptance Employee Initials |
|---|---|---|
| 4.4 lbs. ozs. | | A.D. |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

FILED
MAY 02 2022
US DISTRICT COURT